**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CATHETER WAVE INNOVATIONS LLC,<br><br>*Plaintiff*,<br><br>*v.*<br><br>SHOCKWAVE MEDICAL, INC.<br><br>*Defendant*. | Civil Action No. ________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Catheter Wave Innovations LLC ("Catheter Wave" or "Plaintiff"), by and through its attorneys, for its Complaint for Patent Infringement against Defendant Shockwave Medical, Inc. ("Shockwave" or "Defendant") demands a jury trial, and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement of United States Patent Nos. 11,925,366 ("the '366 Patent"), 12,004,760 ("the '760 Patent"), 12,239,332 ("the '332 Patent"), 12,364,493 ("the '493 Patent"), 12,364,494 ("the '494 Patent"), and 12,402,900 ("the '900 Patent") (collectively, "the Asserted Patents"). This action arises out of Shockwave's manufacture, use, sale, offer to sell within the United States, and/or importation to the United States, of infringing catheters including, but not limited to, the

catheters marketed and sold under the names Shockwave C2, Shockwave C2+, Shockwave C2 Aero, Shockwave L6, Shockwave M5, Shockwave M5+, Shockwave S[4], and Shockwave E[8], which are designed to be used with at least the electronic controller marketed and sold under the name Shockwave IVL Generator and Connector Cable (collectively, the "Accused Products").

## THE PARTIES

2. Catheter Wave is a limited liability company organized under the laws of the state of Minnesota, having its principal place of business at 502 West 7th Street, Suite 100, Erie PA 16502-1333.

3. Upon information and belief, Defendant Shockwave[1] is a corporation existing under the laws of the state of Delaware, having its principal place of business at 5403 Betsy Ross Drive, Santa Clara, California 95054. Shockwave also has regular and established places of business in other jurisdictions, including the District of Minnesota.

## JURISDICTION AND VENUE

4. This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

[1] On September 3, 2026, Shockwave announced that, effective October 1, 2026, it would transition from operating under the name "Shockwave Medical" and now will operate as "Johnson & Johnson MedTech." *See* Shockwave Medical, LINKEDIN, https://www.linkedin.com/posts/shockwave-medical_were-rolling-out-the-red-carpet-on-october-activity-7500523165777997824-sruD/?_sp=9aa2e5b1-31e6-4e9f-b866-0ce223a0f553.1788958678347 (last accessed September 16, 2026). For purposes of this Complaint, however, Catheter Wave will continue to refer to Defendant as "Shockwave."

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Shockwave because its contacts with the District of Minnesota are continuous and systematic. On information and belief, Shockwave maintains research and development facilities in Minnesota; maintains numerous employees in Minnesota; solicits and conducts business in Minnesota; and is registered to do business in Minnesota.

7. This Court also has personal jurisdiction over Shockwave because, among other reasons, Shockwave has engaged in substantial and not isolated activity within this district by conducting and transacting business operations throughout the United States, including in the District of Minnesota, and deriving substantial revenue from interstate commerce.

8. This Court also has personal jurisdiction over Shockwave because, among other reasons, Shockwave has established minimum contacts within the forum such that the exercise of jurisdiction over Shockwave will not offend traditional notions of fair play and substantial justice. For instance, Shockwave has placed at least one product that practices the claimed invention of the Asserted Patents into the stream of commerce with the reasonable expectation and/or knowledge that purchasers and users of such products were located within the District of Minnesota. Shockwave has also sold, advertised, marketed, and/or distributed products in this District.

9. On information and belief, Shockwave maintains a permanent facility at the following address:

600 County Road Drive West
Suites 11 and 14
New Brighton, MN 55112

10. On information and belief, at its New Brighton facility, Shockwave researches, develops, and/or manufactures the Shockwave Reducer—a medical device that is used to treat refractory angina.

11. On information and belief, Shockwave employs multiple employees at its New Brighton facility, including supply chain engineers, quality engineers, research and development engineers, and manufacturing technicians.

12. Shockwave's New Brighton, Minnesota facility is a regular and established place of business.

13. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Shockwave has a regular and established place of business in Minnesota, a substantial part of Shockwave's infringing activities have occurred and/or resulted in direct harm to Plaintiff in this District, and Shockwave is subject to this Court's personal jurisdiction.

## BACKGROUND

## THE PATENTED TECHNOLOGY

14. The Asserted Patents are directed to catheter medical devices that can be used to treat arterial plaques, including devices equipped with electronic controllers. The formation of plaques in human blood vessels is a well-known and life-threatening condition. Among other complications, arterial plaques can restrict blood flow within the vessels, and create risk that plaques will spontaneously crack and spill potentially

dangerous debris into the blood stream. In particular, for example, "[v]ulnerable plaques are vascular plaques that have a very thin cap that makes them prone to be easily cracked, which can let out the mixture of cholesterol and cellulose debris from under the cap." '366 patent 19:40–44. "Even 5% reduction of vessel cross-sectional area (stenosis) can be life threatening in the case of vulnerable plaques." *Id.* at 19:51–52. "Stenotic plaques can reduce blood flow for organs or body appendages (arms and legs) that translates in ischemia of the affected tissue due to its deprivation of proper nutrients and oxygenation. Ischemic tissue can be a life threatening situation if is [sic] affecting the heart . . . ." *Id.* at 18:58–61. As a result, at the time of the invention, there was a significant need for effective treatments for vulnerable and stenotic plaques.

15. The Asserted Patents disclose pathbreaking shock wave catheter devices that can be inserted into blood vessels affected by arterial plaques and positioned near the plaques, and can generate pressure shockwaves inside the body within the blood vessels. Using these devices, a healthcare professional can treat life-threatening plaques in blood vessels without surgery, delivering shock waves to plaques and breaking them up "where the generation of small particles from the plaques (stenotic plaques or vulnerable plaques) can flow down the blood stream without any life threatening consequences." '366 patent at 42:1–4.

## THE ASSERTED PATENTS
### The ’366 Patent

16. On March 12, 2024, United States Patent No. 11,925,366, titled “Catheter with multiple shock wave generators” was duly and legally issued by the United States Patent and Trademark Office (“USPTO”).

17. A true and correct copy of the ’366 Patent is attached hereto as **Exhibit A**.

18. Dr. Iulian Cioanta and Christopher Cashman are the named inventors of the ’366 Patent.

19. Plaintiff is the sole owner by assignment of all rights, title, and interest in the ’366 Patent. Catheter Wave has the right to sue and recover for any past, present, or future infringement of the ’366 Patent.

20. The ’366 Patent is valid and enforceable.

21. The ’366 Patent is directed to, among other things, “[a] catheter includ[ing] multiple shock wave generators electrically controlled to produce shock waves simultaneously, sequentially or in pre-determined patterns for intracorporeal treatment of blood vessels.” ’366 Patent (Ex. A) at Abstract. Claim 1 of the ’366 Patent is exemplary. It recites: “[a]n apparatus including a catheter sized for insertion in a blood vessel comprising: multiple pairs of electrodes coupled to and along a length of the catheter between a proximal end and distal end of the catheter, wherein each pair of electrodes is stationary relative to the catheter, and wherein each pair of electrodes is positioned to produce shock waves without generating heat that ablates tissue of the blood vessel; a balloon that encloses a fluid around the multiple pairs of electrodes; and an electronic

controller operably coupled to the multiple pairs of electrodes, wherein the controller includes software programmed to fire the multiple pairs of electrodes to produce shock waves at least one of simultaneously, sequentially and in a predetermined pattern." *Id.* at claim 1.

**The '760 Patent**

22. On June 11, 2024, United States Patent No. 12,004,760, titled "Catheter with shock wave electrodes aligned on longitudinal axis," was duly and legally issued by the USPTO.

23. A true and correct copy of the '760 Patent is attached hereto as **Exhibit B**.

24. Dr. Iulian Cioanta is the named inventor of the '760 Patent.

25. Plaintiff is the sole owner by assignment of all rights, title, and interest in the '760 Patent. Plaintiff has the right to sue and recover for any past, present, or future infringement of the '760 Patent.

26. The '760 Patent is valid and enforceable.

27. The '760 Patent is directed to, among other things, "[a] catheter that fits within a blood vessel wall includes electrodes aligned along a longitudinal axis of the catheter that produce unfocused shock waves that propagate radially toward the blood vessel wall for treatment." '760 Patent (Ex. B) at Abstract. Claims 1 and 18 of the '760 Patent are exemplary. Claim 1 recites: "[a]n apparatus comprising: a catheter sized to fit within a wall of a blood vessel, wherein the catheter includes a distal end inserted into the blood vessel; a balloon including a liquid inlet coupled to the catheter; first and second electrodes coupled to the catheter within the balloon and aligned on a longitudinal axis

along the length of the catheter, wherein the electrodes upon electrical discharge produce an unfocused radial pressure shock wave that propagates away from the longitudinal axis, and wherein one or both of the first and second electrodes do not intersect outward propagation of the unfocused radial pressure shock wave in a direction from the longitudinal axis of the catheter to the wall of the blood vessel; a first radiopaque marker coupled to the catheter at a proximal end of the balloon and a second radiopaque marker coupled to the catheter at an opposite distal end of the balloon; and the first and second electrodes positioned within the balloon between the first radiopaque marker and the second radiopaque marker." *Id.* at 1. Claim 18 recites: "[a] method of treating a target area of a blood vessel wall comprising delivering radial pressure shock waves with the apparatus of claim 1 to the target area." *Id.* at claim 18.

**The '332 Patent**

28. On March 4, 2025, United States Patent No. 12,239,332 titled "Catheter with multiple shock wave generators," was duly and legally issued by the USPTO.

29. A true and correct copy of the '332 Patent is attached hereto as **Exhibit C**.

30. Dr. Iulian Cioanta and Christopher Cashman are the inventors of the '332 Patent.

31. Plaintiff is the sole owner by assignment of all rights, title, and interest in the '332 Patent. Plaintiff has the right to sue and recover for any past, present, or future infringement of the '332 Patent.

32. The '332 Patent is valid and enforceable.

33. The ’332 Patent is directed to, among other things, “[a] catheter includes multiple shock wave generators in a balloon between proximal and distal ends of the catheter and electrically controlled by software of a controller to produce shock waves at different discharge point locations for intracorporeal treatment of a blood vessel.” ’332 Patent (Ex. C) at Abstract. Claim 1 of the ’332 Patent is exemplary. It recites: “[a]n apparatus including a catheter sized for insertion in a blood vessel comprising: a plurality of shock wave generators coupled to and between proximal and distal ends of the catheter at different discharge point locations along the catheter, wherein each shock wave generator is configured to generate shock waves at its respective discharge location; a balloon enclosing the plurality of shock wave generators; and an electronic controller operably coupled to the plurality of shock wave generators, wherein the controller includes software programmed to fire the plurality of shock wave generators to produce shock waves initiating from each of the different discharge point locations.” *Id.* at claim 1.

**<u>The ’493 Patent</u>**

34. On July 22, 2025, United States Patent No. 12,364,493 titled “Method of Treating a Blood Vessel with Multiple Shock Wave Discharge Points in a Catheter Balloon,” was duly and legally issued by the USPTO.

35. A true and correct copy of the ’493 Patent is attached hereto as **Exhibit D**.

36. Dr. Iulian Cioanta and Dr. Christopher Cashman are the inventors of the ’493 Patent.

37. Plaintiff is the sole owner by assignment of all rights, title, and interest in the ’493 Patent. Plaintiff has the right to sue and recover for any past, present, or future infringement of the ’493 Patent.

38. The ’493 Patent is valid and enforceable.

39. The ’493 Patent is directed to, among other things, a method where “[a] target location of a blood vessel is treated by providing an apparatus that includes a catheter and multiple shock wave discharge points positioned within a balloon along the catheter between proximal and distal ends of the catheter, wherein the distal end extends distally beyond the balloon and the proximal end extends proximally beyond the balloon.” ’493 Patent (Ex. D) at Abstract. Claim 1 of the ’493 Patent is exemplary. It recites: “[a] method for treating a target location of a blood vessel, comprising the steps of: providing an apparatus comprising: a catheter sized to fit in a blood vessel including a proximal end and distal end; and multiple shock wave discharge points within a balloon positioned along the catheter between the proximal end and the distal end, wherein the distal end extends distally beyond the balloon and the proximal end extends proximally beyond the balloon; placing a guidewire into the blood vessel; advancing a guidewire lumen over the guidewire to advance the balloon to the target location of the blood vessel; inflating the balloon with fluid; producing non-focused shock waves by activating an electronic controller connected to at least one electrode at each shock wave discharge point of the multiple shock wave discharge points; applying the non-focused shock waves through the balloon to treat the target location with the shock waves; deflating the balloon; and withdrawing the catheter from the blood vessel.” *Id.* at claim 1.

**The ’494 Patent**

40. On July 22, 2025, United States Patent No. 12,364,494 titled “Multiple Shock Waves Catheter,” was duly and legally issued by the USPTO.

41. A true and correct copy of the ’494 Patent is attached hereto as **Exhibit E**.

42. Dr. Iulian Cioanta and Dr. Christopher Cashman are the inventors of the ’494 Patent.

43. Plaintiff is the sole owner by assignment of all rights, title, and interest in the ’494 Patent. Plaintiff has the right to sue and recover for any past, present, or future infringement of the ’494 Patent.

44. The ’494 Patent is valid and enforceable.

45. The ’494 Patent is directed to, among other things, “[a]n apparatus that includes a catheter and multiple shock wave discharge points positioned within a balloon along the catheter between proximal and distal ends of the catheter, wherein the distal end extends distally beyond the balloon” and “[a]n electronic controller includes software and is operably coupled to control firing and production of shock waves at each shock wave discharge point of the multiple shock wave discharge points.” ’494 Patent (Ex. E) at Abstract. Claim 1 of the ’494 Patent is exemplary. It recites: “[a]n apparatus comprising: a catheter sized to fit in a blood vessel including a proximal end and distal end; multiple shock wave discharge points positioned along the catheter within a non-perforated balloon between the proximal end and the distal end of the catheter, wherein the distal end of the catheter extends distally beyond a distal end of the balloon; and an electronic controller operably coupled to the multiple shock wave discharge points wherein the electronic

controller includes software controlling firing and production of shock waves at the multiple shock wave discharge points." *Id.* at claim 1.

**<u>The '900 Patent</u>**

46. On September 2, 2025, United States Patent No. 12,402,900 titled "Blood Vessel Shock Wave Treatment Catheter," was duly and legally issued by the USPTO.

47. A true and correct copy of the '900 Patent is attached hereto as **Exhibit F**.

48. Dr. Iulian Cioanta is the inventor of the '900 Patent.

49. Plaintiff is the sole owner by assignment of all rights, title, and interest in the '900 Patent. Plaintiff has the right to sue and recover for any past, present, or future infringement of the '900 Patent.

50. The '900 Patent is valid and enforceable.

51. The '900 Patent is directed to, among other things, "[a]n apparatus includes a catheter sized to fit within a wall of a blood vessel, wherein the catheter includes a balloon with a liquid inlet coupled to the catheter, a plurality of shock wave generators coupled to the catheter within the balloon, and wherein the shock wave generators upon electrical discharge produce shock waves that propagate away from the catheter toward the wall of the blood vessel, and one or more radiopaque markers coupled to the catheter to identify the location of the balloon." '900 Patent (Ex. F) at Abstract. Claim 1 of the '900 Patent is exemplary. It recites: "[a]n apparatus comprising: a blood vessel catheter including a distal end insertable into a blood vessel and a proximal end opposite the distal end; a first electrode paired with a second electrode within a non-perforated balloon coupled to and inflatable around the catheter between the distal end and the proximal end, wherein the

distal end of the catheter extends beyond a sealed end of the balloon, and wherein the balloon includes a liquid inlet; the first electrode and second electrode aligned to not extend beyond the distal end of the catheter; and a first radiopaque marker coupled to the catheter that visually indicates a first end of the balloon nearer the proximal end of the catheter and a second radiopaque marker coupled to the catheter that visually indicates a second distal end of the catheter nearer the distal end of the catheter; and the first and second electrodes positioned within the balloon between the first and second radiopaque markers." *Id.* at claim 1.

## <u>SHOCKWAVE'S KNOWLEDGE OF THE ASSERTED PATENTS</u>

52. Shockwave was provided notice of the Asserted Patents by a prior assignee of the Asserted Patents, SanuWave, Inc. ("SanuWave").

53. On September 10, 2021, SanuWave sent a letter to Shockwave notifying it of U.S. Patent Application Publication No. 2021/0267615 ("the '615 Publication"), and attached a copy of the '615 Publication. The '615 Application is a member of the Asserted Family. Specifically, it is the published application corresponding to U.S. Patent Application No. 17/188,812 (the "'812 Application"). The '366 Patent issued from a continuation of the '812 Application, and the '332 Patent issued from a continuation of the application that matured into the '366 Patent. During these discussions, SanuWave also provided Shockwave information about patents covering other cardiovascular devices and treatments.

54. Shortly after receiving this information, Shockwave sent an offer to obtain a non-exclusive license on the '615 Publication and any patent obtained from it. On February

17, 2022, SanuWave sent a counter-offer to Shockwave, but the parties failed to reach an agreement and negotiations fell through.

55. On March 9, 2023, SanuWave provided Shockwave with a copy of U.S. Patent Application Publication No. 2023/0028890 ("the '890 Application"). The '890 Application issued on June 11, 2024 as U.S. Patent No. 12,004,759, a member of the Asserted Family.

56. On July 22, 2026, Catheter Wave sent a letter to Shockwave to see if they would be interested in acquiring the patents in the Asserted Family.

57. Shockwave received this letter on July 24, 2026.

58. Shockwave did not respond to this letter.

59. On September 3, 2026, Catheter Wave sent an email to Shockwave following up on the July 22, 2026 letter and to request a response from Shockwave regarding the letter's inquiries. This email requested a response by September 15, 2026.

60. Shockwave did not respond to this email.

61. On information and belief, Shockwave has known of each of the Asserted Patents and Shockwave's infringement of them since the issuance of each patent.

## COUNT I
## INFRINGEMENT OF THE '366 PATENT

62. Plaintiff incorporates by reference the preceding paragraphs 1-61 of this Complaint as if fully set forth herein.

63. Plaintiff is the owner of the '366 Patent with all substantial rights to the '366 Patent, including the exclusive right to enforce, sue, and recover damages for any past, present, or future infringement.

64. The '366 Patent is valid and enforceable for Plaintiff to collect damages for any and all infringement.

65. Shockwave has directly infringed the claims, literally and/or via the doctrine of equivalents, one or more claims of the '366 Patent through, among other activities, manufacturing, selling, offering to sell, promoting, and/or importing the Accused Products, without the permission of Plaintiff.

66. Each of the Accused Products at least includes a catheter sized for insertion in a blood vessel.

67. Each of the Accused Products at least include multiple pairs of electrodes coupled to and along a length of the catheter between a proximal end and distal end of the catheter, wherein each pair of electrodes is stationary relative to the catheter, and wherein each pair of electrodes is positioned to produce shock waves without generating heat that ablates tissue of the blood vessel.

68. Each of the Accused Products at least includes a balloon that encloses a fluid around the multiple pairs of electrodes.

69. Each of the Accused Products at least includes an electronic controller operably coupled to the multiple pairs of electrodes, wherein the controller includes software programmed to fire the multiple pairs of electrodes to produce shock waves at least one of simultaneously, sequentially and in a predetermined pattern.

70. Upon information and belief, Defendant is actively inducing others to infringe the ’366 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(b). Defendant’s inducement includes, without limitation and with specific intent to encourage direct infringement, knowingly inducing medical practitioners, including physicians, to use the Accused Products.

71. Upon information and belief, Defendant is aware, has knowledge, and/or is willfully blind to the fact that the Accused Products, and their sale and use infringes one or more claims of ’366 Patent, and that the Accused Products are especially made or adapted for use in a manner that infringes one or more claims of the ’366 patent.

72. Upon information and belief, Defendant is contributing to the infringement of the ’366 Patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(c). Upon information and belief, the Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

73. As a result of Defendant’s infringement of the ’366 Patent, Plaintiff has suffered injury, and Plaintiff is entitled to recover from Defendant for the injuries sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial.

74. Upon information and belief, Defendant’s infringement of the ’366 Patent is knowing and willful.

75. This case is exceptional, and Plaintiff is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

76. Plaintiff is without an adequate remedy at law because Shockwave's infringement has irreparably harmed Plaintiff and will continue to do so unless Shockwave is enjoined by the Court from the actions complained of herein.

## COUNT II
## INFRINGEMENT OF THE '760 PATENT

77. Plaintiff incorporates by reference the preceding paragraphs 1-76 of this Complaint as if fully set forth herein.

78. Plaintiff is the owner of the '760 Patent with all substantial rights to the '760 Patent, including the exclusive right to enforce, sue, and recover damages for any past, present, or future infringement.

79. The '760 Patent is valid and enforceable for Plaintiff to collect damages for any and all infringement.

80. Defendant has directly infringed the claims, literally and/or via the doctrine of equivalents, one or more claims of the '760 Patent through, among other activities, manufacturing, selling, offering to sell, promoting, and/or importing the Accused Products, without the permission of Plaintiff.

81. Each of the Accused Products contains at least a catheter sized to fit within a wall of a blood vessel, wherein the catheter includes a distal end inserted into the blood vessel.

82. Each of the Accused Products contains at least a balloon including a liquid inlet coupled to the catheter.

83. Each of the Accused Products contains at least first and second electrodes coupled to the catheter within the balloon and aligned on a longitudinal axis along the length of the catheter, wherein the electrodes upon electrical discharge produce an unfocused radial pressure shock wave that propagates away from the longitudinal axis, and wherein one or both of the first and second electrodes do not intersect outward propagation of the unfocused radial pressure shock wave in a direction from the longitudinal axis of the catheter to the wall of the blood vessel.

84. Each of the Accused Products contains at least a first radiopaque marker coupled to the catheter at a proximal end of the balloon.

85. Each of the Accused Products contains at least a second radiopaque marker coupled to the catheter at an opposite distal end of the balloon.

86. Each of the Accused Products contains at least a first and second electrodes positioned within the balloon between the first radiopaque marker and the second radiopaque marker.

87. Upon information and belief, Defendant is actively inducing others to infringe the '760 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(b). Defendant's inducement includes, without limitation and with specific intent to encourage direct infringement,

knowingly inducing medical practitioners, including physicians, to use the Accused Products.

88. Upon information and belief, Defendant is aware, has knowledge, and/or is willfully blind to the fact that the Accused Products, and their sale and use infringes one or more claims of ’760 Patent, and that the Accused Products are especially made or adapted for use in a manner that infringes one or more claims of the ’760 patent.

89. Upon information and belief, Defendant is contributing to the infringement of the ’760 Patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(c). Upon information and belief, the Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

90. As a result of Defendant’s infringement of the ’760 Patent, Plaintiff has suffered injury, and Plaintiff is entitled to recover from Defendant for the injuries sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial.

91. Upon information and belief, Defendant’s infringement of the ’760 Patent is knowing and willful.

92. This case is exceptional, and Plaintiff is entitled to an award of attorneys’ fees under 35 U.S.C. § 285.

93. Plaintiff is without an adequate remedy at law because Shockwave’s infringement has irreparably harmed Plaintiff and will continue to do so unless Shockwave is enjoined by the Court from the actions complained of herein.

**COUNT III**
**INFRINGEMENT OF THE ’332 PATENT**

94. Plaintiff incorporates by reference the preceding paragraphs 1-93 of this Complaint as if fully set forth herein.

95. Plaintiff is the owner of the ’332 Patent with all substantial rights to the ’332 Patent, including the exclusive right to enforce, sue, and recover damages for any past, present, or future infringement.

96. The ’332 Patent is valid and enforceable for Plaintiff to collect damages for any and all infringement.

97. Defendant has directly infringed the claims, literally and/or via the doctrine of equivalents, one or more claims of the ’332 Patent through, among other activities, manufacturing, selling, offering to sell, promoting, and/or importing the Accused Products, without the permission of Plaintiff.

98. Each of the Accused Products contains at least a catheter sized for insertion in a blood vessel.

99. Each of the Accused Products contains at least a plurality of shock wave generators coupled to and between proximal and distal ends of the catheter at different discharge point locations along the catheter, wherein each shock wave generator is configured to generate shock waves at its respective discharge location.

100. Each of the Accused Products contains at least a balloon enclosing the plurality of shock wave generators.

101. Each of the catheters in the Accused Products contains at least an electronic controller operably coupled to the plurality of shock wave generators, wherein the controller includes software programmed to fire the plurality of shock wave generators to produce shock waves initiating from each of the different discharge point locations.

102. Upon information and belief, Defendant is actively inducing others to infringe the ’332 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(b). Defendant’s inducement includes, without limitation and with specific intent to encourage direct infringement, knowingly inducing medical practitioners, including physicians, to use the Accused Products.

103. Upon information and belief, Defendant is aware, has knowledge, and/or is willfully blind to the fact that the Accused Products, and their sale and use infringes one or more claims of ’332 Patent, and that the Accused Products are especially made or adapted for use in a manner that infringes one or more claims of the ’332 patent.

104. Upon information and belief, Defendant is contributing to the infringement of the ’332 Patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(c). Upon information and belief, the Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

105. As a result of the Defendant's infringement of the '332 Patent, Plaintiff has suffered injury, and Plaintiff is entitled to recover from Defendant for the injuries sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial.

106. Upon information and belief, Defendant's infringement of the '332 Patent is knowing and willful.

107. This case is exceptional, and Plaintiff is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

108. Plaintiff is without an adequate remedy at law because Shockwave's infringement has irreparably harmed Plaintiff and will continue to do so unless Shockwave is enjoined by the Court from the actions complained of herein.

**COUNT IV**
**INFRINGEMENT OF THE '493 PATENT**

109. Plaintiff incorporates by reference the preceding paragraphs 1-108 of this Complaint as if fully set forth herein.

110. Plaintiff is the owner of the '493 Patent with all substantial rights to the '493 Patent, including the exclusive right to enforce, sue, and recover damages for any past, present, or future infringement.

111. The '493 Patent is valid and enforceable for Plaintiff to collect damages for any and all infringement.

112. Defendant has directly infringed the claims, literally and/or via the doctrine of equivalents, one or more claims of the '493 Patent through, among other activities,

performing, the claimed methods, including through the use, promotion, and operation of the Accused Products, without the permission of Plaintiff.

113. Each of the Accused Products contains at least a catheter sized to fit in a blood vessel including a proximal end and distal end.

114. Each of the Accused Products contains at least multiple shock wave discharge points within a balloon positioned along the catheter between the proximal end and the distal end, wherein the distal end extends distally beyond the balloon and the proximal end extends proximally beyond the balloon.

115. Each of the Accused Products contains at least a guidewire lumen that is designed to be placed into a blood vessel.

116. Each of the Accused Products contains at least a guidewire lumen designed to advance over a guidewire to advance a balloon to a target location of a blood vessel.

117. Each of the Accused Products contains at least a balloon designed to be inflated with fluid.

118. Each of the Accused Products contains at least an electronic controller connected to at least one electrode at each shock wave discharge point of the multiple shock wave discharge points that can be activated to produce non-focused shock waves.

119. Upon information and belief, Defendant is actively inducing others to infringe the ’493 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(b). Defendant’s inducement includes, without limitation and with specific intent to encourage direct infringement,

knowingly inducing medical practitioners, including physicians, to use the Accused Products.

120. Upon information and belief, Defendant is aware, has knowledge, and/or is willfully blind to the fact that the Accused Products, and their sale and use infringes one or more claims of '493 Patent, and that the Accused Products are especially made or adapted for use in a manner that infringes one or more claims of the '493 patent.

121. Upon information and belief, Defendant is contributing to the infringement of the '493 Patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(c). Upon information and belief, the Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

122. As a result of the Defendant's infringement of the '493 Patent, Plaintiff has suffered injury, and Plaintiff is entitled to recover from Defendant for the injuries sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial.

123. Upon information and belief, Defendant's infringement of the '493 Patent is knowing and willful.

124. This case is exceptional, and Plaintiff is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

125. Plaintiff is without an adequate remedy at law because Shockwave's infringement has irreparably harmed Plaintiff and will continue to do so unless Shockwave is enjoined by the Court from the actions complained of herein.

**COUNT V**
**INFRINGEMENT OF THE '494 PATENT**

126. Plaintiff incorporates by reference the preceding paragraphs 1-125 of this Complaint as if fully set forth herein.

127. Plaintiff is the owner of the '494 Patent with all substantial rights to the '494 Patent, including the exclusive right to enforce, sue, and recover damages for any past, present, or future infringement.

128. The '494 Patent is valid and enforceable for Plaintiff to collect damages for any and all infringement.

129. Defendant has directly infringed the claims, literally and/or via the doctrine of equivalents, one or more claims of the '494 Patent through, among other activities, manufacturing, selling, offering to sell, promoting, and/or importing the Accused Products, without the permission of Plaintiff.

130. Each of the Accused Products contains at least a catheter sized to fit in a blood vessel including a proximal end and distal end.

131. Each of the Accused Products contains at least multiple shock wave discharge points positioned along the catheter within a non-perforated balloon between the proximal end and the distal end of the catheter, wherein the distal end of the catheter extends distally beyond a distal end of the balloon.

132. Each of the Accused Products contains at least an electronic controller operably coupled to the multiple shock wave discharge points wherein the electronic

controller includes software controlling firing and production of shock waves at the multiple shock wave discharge points.

133. Upon information and belief, Defendant is actively inducing others to infringe the ’494 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(b). Defendant’s inducement includes, without limitation and with specific intent to encourage direct infringement, knowingly inducing medical practitioners, including physicians, to use the Accused Products.

134. Upon information and belief, Defendant is aware, has knowledge, and/or is willfully blind to the fact that the Accused Products, and their sale and use infringes one or more claims of ’494 Patent, and that the Accused Products are especially made or adapted for use in a manner that infringes one or more claims of the ’494 patent.

135. Upon information and belief, Defendant is contributing to the infringement of the ’494 Patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(c). Upon information and belief, the Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

136. As a result of the Defendant’s infringement of the ’494 Patent, Plaintiff has suffered injury, and Plaintiff is entitled to recover from Defendant for the injuries sustained as a result of Defendant’s wrongful acts in an amount subject to proof at trial.

137. Upon information and belief, Defendant's infringement of the '494 Patent is knowing and willful.

138. This case is exceptional, and Plaintiff is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

139. Plaintiff is without an adequate remedy at law because Shockwave's infringement has irreparably harmed Plaintiff and will continue to do so unless Shockwave is enjoined by the Court from the actions complained of herein.

## COUNT VI
## INFRINGEMENT OF THE '900 PATENT

140. Plaintiff incorporates by reference the preceding paragraphs 1-139 of this Complaint as if fully set forth herein.

141. Plaintiff is the owner of the '900 Patent with all substantial rights to the '900 Patent, including the exclusive right to enforce, sue, and recover damages for any past, present, or future infringement.

142. The '900 Patent is valid and enforceable for Plaintiff to collect damages for any and all infringement.

143. Defendant has directly infringed the claims, literally and/or via the doctrine of equivalents, one or more claims of the '900 Patent through, among other activities, manufacturing, selling, offering to sell, promoting, and/or importing the Accused Products, without the permission of Plaintiff.

144. Each of the Accused Products contains at least a blood vessel catheter including a distal end insertable into a blood vessel and a proximal end opposite the distal end.

145. Each of the Accused Products contains at least a first electrode paired with a second electrode within a non-perforated balloon coupled to and inflatable around the catheter between the distal end and the proximal end, wherein the distal end of the catheter extends beyond a sealed end of the balloon, and wherein the balloon includes a liquid inlet.

146. Each of the Accused Products contains at least a first electrode and second electrode aligned to not extend beyond the distal end of the catheter.

147. Each of the Accused Products contains at least a first radiopaque marker coupled to the catheter that visually indicates a first end of the balloon nearer the proximal end of the catheter and a second radiopaque marker coupled to the catheter that visually indicates a second distal end of the catheter nearer the distal end of the catheter.

148. Each of the Accused Products contains at least a first and second electrodes are positioned within the balloon between the first and second radiopaque markers.

149. Upon information and belief, Defendant is actively inducing others to infringe the ’900 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(b). Defendant’s inducement includes, without limitation and with specific intent to encourage direct infringement, knowingly inducing medical practitioners, including physicians, to use the Accused Products.

150. Upon information and belief, Defendant is aware, has knowledge, and/or is willfully blind to the fact that the Accused Products, and their sale and use infringes one or more claims of '900 Patent, and that the Accused Products are especially made or adapted for use in a manner that infringes one or more claims of the '900 patent.

151. Upon information and belief, Defendant is contributing to the infringement of the '900 Patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing the Accused Products in the United States in violation of 35 U.S.C. § 271(c). Upon information and belief, the Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

152. As a result of the Defendant's infringement of the '900 Patent, Plaintiff has suffered injury, and Plaintiff is entitled to recover from Defendant for the injuries sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial.

153. Upon information and belief, Defendant's infringement of the '900 Patent is knowing and willful.

154. This case is exceptional, and Plaintiff is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

155. Plaintiff is without an adequate remedy at law because Shockwave's infringement has irreparably harmed Plaintiff and will continue to do so unless Shockwave is enjoined by the Court from the actions complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment in its favor and respectfully prays for the following relief:

a) Judgment that Defendant has infringed each of the Asserted Patents under 35 U.S.C. § 271(a) by making, using, offering to sell, or selling each of the Accused Products;

b) Judgment that Defendant has infringed each of the Asserted Patents under §§ 271(b)-(c) by making, using, offering to sell, or selling each of the Accused Products;

c) Issuing any available injunctive relief to prevent the commercial manufacture, use, offer to sell, or sale of the Accused Products pursuant to 35 U.S.C. § 283;

d) Awarding treble damages to compensate Plaintiff for Defendant's willful infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty on all past, current, or future infringing sales or other dispositions of the Accused Products;

e) An order awarding Plaintiff pre- and post-judgment interest on its damages;

f) A judgment that this is an exceptional case and that Plaintiff be awarded its attorneys' fees incurred in this action pursuant to 35 U.S.C. § 285;

g) Costs and expenses in this action; and

h) Awarding such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, by and through its undersigned counsel, hereby demands, pursuant to FED. R. CIV. P. 38, a trial by jury on all claims so triable.

Dated: September 21, 2026

Respectfully submitted,

*/s/ J. Derek Vandenburgh*

J. Derek Vandenburgh (MN 0224145)
Jennell C. Bilek (MN 0391078)
CARLSON, CASPERS, VANDENBURGH & LINDQUIST, PA.
225 South 6th Street, Suite 4200
Minneapolis, MN 55402
Tel: 612-436-9600
dvandenburgh@carlsoncaspers.com
jbilek@carlsoncaspers.com

Douglas Kline (*pro hac vice* forthcoming)
Joshua Weinger (*pro hac vice* forthcoming)
Molly Grammel (*pro hac vice* forthcoming)
Riley Wyberg (*pro hac vice* forthcoming)
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
Tel: (617) 570-1000
DKline@goodwinlaw.com
JWeinger@goodwinlaw.com
MGrammel@goodwinlaw.com
RWyberg@goodwinlaw.com

Gabriel Ferrante (*pro hac vice* forthcoming)
GOODWIN PROCTER LLP
620 8th Ave.
New York, NY 10018
Tel: (212) 813-8800
GFerrante@goodwinlaw.com

*Counsel for Plaintiff*
*Catheter Wave Innovations LLC*